UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **DEBORAH M. RACE** | ) | |
| Plaintiff | ) | CASE NO._____ |
| | ) | |
| v. | ) | |
| | ) | |
| **CAMBRIDGE HEALTH ALLIANCE** | ) | |
| Defendant | ) | |

**COMPLAINT**
**(with jury demand endorsed hereon)**

Now comes Plaintiff, **DEBORAH M. RACE**, by and through undersigned counsel, and for her complaint of discrimination against Cambridge Health Alliance, states and avers as follows:

**INTRODUCTION**

1. Plaintiff Deborah M. Race, a Registered Nurse and practicing Pentecostal Christian, seeks damages against Defendant Cambridge Health Alliance for discrimination and the wrongful termination of her employment in violation of Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B, § 4(1A) for objecting to receiving a COVID-19 vaccine on the basis of her sincerely held religious beliefs.

**THE PARTIES**

2. Plaintiff Deborah M. Race ("Plaintiff") was at the time of the acts complained of, a Registered Nurse and a citizen of the Commonwealth of Massachusetts. Plaintiff presently resides at 299 Covered Bridge Rd., Orangeville, PA 17859.

3.      Defendant Cambridge Health Alliance ("Defendant") is integrated public safety net healthcare system that primarily serves Cambridge, Somerville, and the metro-north communities of Malden, Chelsea, Revere and Everett.  Defendant is organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 1493 Cambridge St., Cambridge, MA 02139.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 2000e-2, 2000e-5(f)(3), 42 U.S.C. § 1985(3) and 28 U.S.C. §§ 1331, 1343 because this action arises under federal law.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, for state law claims under M.G.L. c. 151B, §4, because such claims stem from part of the same case or controversy arising from a common nucleus of operative facts.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Defendant operates in this District and as the events complained of occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Plaintiff has timely satisfied all prerequisites to suit under 42 U.S.C. § 2000e and M.G.L. c 151B.   The U.S. Equal Employment Opportunity Commission ("EEOC"), Boston area office, issued Plaintiff a Notice of Right to Sue on October 25, 2022, in Charge No. 523-2021-02444.

## STATEMENT OF OPERATIVE FACTS

### A.     Plaintiff's Religious Beliefs

8.      Plaintiff is, and was at all relevant times, a practicing Pentecostal Christian, who incorporates her faith into all aspects of her life.   As a Pentecostal, Plaintiff believes that her

body is a temple of the Holy Spirit and believes it is her responsibility and requirement to protect the physical integrity of her body against anything that would defile the temple of God.

9. In accordance with her religious beliefs, Plaintiff has declined the flu vaccine and the TD vaccine and does not take prescription medication. Plaintiff's sincere religious beliefs likewise prevent Plaintiff from receiving the COVID-19 vaccine.

10. Plaintiff likewise holds sincere pro-life religious beliefs that prohibit Plaintiff from participating in or benefiting from an abortion no matter how remote in time the abortion occurred. As COVID-19 vaccines have used fetal stem cells that originated from an abortion in their development, testing or manufacture, receiving a COVID-19 vaccine would therefore violate Plaintiff's religious beliefs on this basis as well.

      **B.    Plaintiff's Employment with Defendant**

11. Plaintiff was originally hired as a Nurse Manager by Defendant on January 3, 1994. In 2002, Plaintiff joined Defendant's IT Department as a Clinical Applications Analyst.

12. Approximately 15 years ago, Plaintiff relocated to Wyoming and worked for Defendant remotely until September, 2008. When Plaintiff returned to Massachusetts in 2016, Plaintiff was rehired by Defendant in Defendant's IT Department as an Informatics Development Analyst II, a position that she held until her promotion to Informatics Team Lead in 2018.

13. In her role as Informatics Team Lead, Plaintiff was primarily responsible for overseeing Informatics projects and managing employees who were working on these projects.

14. Prior to the COVID-19 pandemic, Plaintiff worked primarily at Defendant's Somerville campus and worked remotely up to two days a week.

15. Plaintiff received numerous commendations for her work with Defendant and was lauded in her 2019 Performance Evaluation "for [her] ability to increase social interaction amongst the IT team, foster in-person team building, and develop inter-departmental relationships."

      **C.**    **The COVID-19 Pandemic**

16. By the Spring of 2020, the coronavirus, SARS-CoV-2, had spread to many nations, including the United States.

17. According to Defendant, responding to the pandemic required Defendant to make major changes in how it operated to safely provide care to its patients, and attempt to keep its employees safe so that it could continue to provide patient care.

18. On March 16, 2020, Defendant announced that effective that week, employees, including Plaintiff, who could perform work remotely were permitted to work from home.

19. Plaintiff volunteered in the Spring of 2020 to be redeployed by Defendant as a nurse in one of Defendant's comfort care units in Everett Hospital to take care of dying COVID-19 patients. Although Plaintiff had not practiced clinically for years, Plaintiff did not hesitate to help and worked three overnight shifts while continuing to work in her IT position full time.

20. While providing direct patient care in the Spring of 2020, Plaintiff was not vaccinated and often did not have access to personal protective equipment due to shortages. As a result of these efforts, Plaintiff was proclaimed a hero by Defendant and given a Circle Award, an award given to staff who embody Defendant's values of compassion, integrity, respect, community, learning and excellence.

      **D.**    **Defendant's Vaccine Mandate**

21. On or about August 16, 2021, Defendant announced that its staff was required to be fully vaccinated against COVID-19 by October 18, 2021.

22. As part of Defendant's aforementioned notification, Defendant likewise represented that all employees with medical or religious reasons conflicting with the vaccine requirement would be permitted the opportunity to submit an accommodation request to be exempted from the vaccination by October 1, 2021.

### E. Plaintiff's Request for Religious Exemption

23. Plaintiff timely submitted a request for religious exemption ("Exemption Request") in accordance with Defendant's policy and procedures.

24. By way of her Exemption Request, Plaintiff identified herself as a practicing Pentecostal Christian and clearly set forth that her sincerely held Christian religious beliefs and convictions directly conflicted with receiving a COVID-19 vaccine.

25. After receipt of Plaintiff's Exemption Request, Plaintiff was asked to meet with Defendant's interdisciplinary panel on September 20, 2021, which Plaintiff did. During this meeting, Plaintiff once again expressed her objections to the COVID-19 vaccine on religious grounds.

### F. Defendant's Denial of Religious Exemption and Refusal to Accommodate

26. On September 24, 2021, Plaintiff received a letter via email ("Denial") from Defendant's Leave of Absence Case Manager, John Burns, informing Plaintiff that her Exemption Request had been denied. The Denial informed Plaintiff that if Plaintiff was not vaccinated by October 18, 2021 she would be placed on unpaid administrative leave. The Detail further informed Plaintiff, that if Plaintiff was not vaccinated by November 5, 2021, her employment would be terminated.

27. Plaintiff's position in Clinical Informatics was not a patient care position and had been performed remotely both prior to and during the COVID-19 pandemic. Indeed, some of

Plaintiff's colleagues in her department in other states never came on site. Nevertheless, Defendant refused to accommodate Plaintiff and allow her to continue to work remotely and refused to work with Plaintiff in good faith to find a reasonable accommodation that would have allowed Plaintiff to remain employed.

28. After receipt of the Denial, Plaintiff consulted with Mark Sagon, Defendant's Director of Clinical Informatics. During their discussion, Mr. Sagon indicated to Plaintiff that Mr. Sagon was not aware of any requirement that Plaintiff's team would be returning to work in-person on site.

29. After consulting with his superiors, Mr. Sagon confirmed that there was no requirement that Plaintiff come back to work on site[1], and indicated that he did not believe that IT was even consulted prior to the Denial.

30. Allowing Plaintiff to continue to work remotely would not have caused an undue hardship on Defendant.

31. Although Defendant could have reasonably accommodated Plaintiff by permitting her to continue to work remotely, Defendant, based on its bias against Pentecostal Christian beliefs, elected to terminate Plaintiff's employment on November 5, 2021.

32. As a direct and proximate result of her unlawful termination and Defendant's wrongful conduct alleged above, Plaintiff has suffered loss of employment, loss of income, loss of benefits, loss of earning potential and loss of future employment opportunities in an amount to be established at trial.

33. As a direct and proximate result of her unlawful termination and Defendant's wrongful conduct alleged above, Plaintiff and has likewise suffered and continues to suffer emotional

---

[1] In fact, the IT office was converted into an inpatient psychiatric care unit during the pandemic, so there was no longer an office on-site.

distress, humiliation, mental anguish and embarrassment, as well as manifestation of physical symptoms as a result of these conditions. Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering in the future.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e, et seq.**
**Disparate Treatment on the Basis of Religion**

34. Plaintiff hereby realleges the averments set forth in paragraphs one (1) through thirty-three (33) of the Complaint as if fully rewritten hereunder.

35. Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. § 2000e(j); 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

36. Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

37. Employers should assume that an employee's belief is sincere. See EEOC Compliance Manual § 12-IV(A)(3) (January 15, 2021) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination ("Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief.").

38. Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants . . . in any way which would deprive or tend to deprive any individual of

employment opportunities . . . because of such individual's . . . religion . . . . "42 U.S.C. § 2000e 2(a)(2).

39.     Furthermore, Title VII provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related . . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it.  42 U.S.C. § 2000e-2(k)(1)(A).

40.     Plaintiff's sincerely held religious beliefs conflict with Defendant's policy requiring her to obtain a COVID-19 vaccine.

41.     Plaintiff raised her sincerely held religious beliefs with Defendant, brought her objections and request for religious accommodation and exemption to Defendant's attention in accordance with Defendant's policies and procedures, and requested a religious exemption and accommodation from Defendant's COVID-19 vaccine mandate.

42.     Even if facially neutral, Defendant's vaccination policy was enforced in a way that had a disparate impact on Plaintiff by forcing her to abandon her religious obligation or forgo employment with Defendant.

43.     Defendant's refusal to recognize and accommodate Plaintiff's sincere religious belief was neither required for Plaintiff's job duties nor consistent with business necessity.

44.     Defendant's discrimination against Plaintiff was intentional and performed with malice, willfullness, and reckless indifference to Plaintiff's protected civil rights.

45.     Any justification offered by Defendant for its adverse employment actions against Plaintiff is either false or insufficient to support the nature of the adverse employment actions taken.

46. Defendant, therefore, violated Title VII, and Plaintiff is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

47. Defendant's unlawful conduct described herein justifies an award of punitive damages under Title VII.

**SECOND CAUSE OF ACTION**
**Violation of the Massachusetts Fair Employment Practices Act**
**Massachusetts General Law Ch. 151B, § 4**
**Religious Discrimination**

48. Plaintiff hereby realleges the averments set forth in paragraphs one (1) through forty-seven (47) of the Complaint as if fully rewritten hereunder.

49. At all times herein mentioned, M.G.L. c. 151B, et seq., the Fair Employment Practices Act ("FEPA"), was in full force and effect and was binding on Defendant, as Defendant regularly employed five (5) or more persons.

50. Under the FEPA, M.G.L. c. 151B, § 4(1), it is an unlawful employment practice for an employer because of the religious creed of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

51. Under the FEPA, M.G.L. c. 151B, § 4(1A), "[i]t shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, his creed or religion as required by that creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such individual. . . . [T]he words ''creed or religion'' mean any sincerely held religious beliefs,

9

without regard to whether such beliefs are approved, espoused, prescribed or required by an established church or other religious institution or organization."

52. Plaintiff's sincerely held religious beliefs conflict with Defendant's policy requiring her to obtain a COVID-19 vaccine.

53. Plaintiff raised her sincerely held religious beliefs with Defendant, brought her objections and request for religious accommodation and exemption to Defendant's attention in accordance with Defendant's policies and procedures, and requested a religious exemption and accommodation from Defendant's COVID-19 vaccine mandate.

54. Defendant lacked justification for its adverse employment actions against Plaintiff, and said actions were neither based on job-related rationale nor consistent with business necessity.

55. Defendant violated its duties under FEPA and discriminated against Plaintiff based on her sincerely held religious beliefs concerning the terms, conditions, and privileges of employment.

56. As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, the intangible loss of employment-related opportunities in her field, and damage to her professional reputation, all in an amount subject to proof at the time of trial, Plaintiff claims such amounts as damages pursuant to M.G.L. c. 151B, § 9.

57. As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms resulting from the stress. Plaintiff is informed and believes and thereupon alleges that she will continue to experience said

physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

58.     As a proximate result of Defendant's wrongful acts, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith. Plaintiff is entitled to recover attorney's fees and costs under M.G.L. c. 151B, §9.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant and:

A.      Order Defendant to make Plaintiff whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

B.      Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

C.      Order Defendant to pay Plaintiff punitive damages for the intentional, reckless and/or egregious conduct described above, in an amount to be determined at trial. *See Haddad v. Wal-Mart Stores, Inc.,* 455 Mass. 1024 (2010).

D.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them, from discriminating against applicants and current or future employees based on their religious

beliefs and/or their refusal to violate their religious beliefs, including but not limited to, in their current and future employee vaccination policies.

E. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including but not limited to effective policies prohibiting religious discrimination and allowing for appropriate religious accommodation as part of its current and future employee vaccination policies, all of which eradicate the effects of Defendant's past and present unlawful employment practices.

F. Award attorney's fees and costs of this action.

G. Award such other relief as the Court may deem appropriate.

DEBORAH M. RACE

By her attorney

/s/RICHARD B. REILING
RICHARD B. REILING, ESQ.
BBO # 629203
BOTTONE | REILING
63 Atlantic Ave., 3rd Floor
Boston, MA 02110
Phone:     (617) 412-4291
Facsimile: (617) 412-4406
E-Mail:    richard@bottonereiling.com

## JURY DEMAND

Plaintiff demands trial by jury as to all issues herein.

/s/RICHARD B. REILING
RICHARD B. REILING, ESQ.
BBO # 629203