UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DEBORAH RACE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:23-cv-10143-JEK |
| CAMBRIDGE HEALTH ALLIANCE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND PLAINTIFF'S MOTION TO COMPEL**

**KOBICK, J.**

Plaintiff Deborah Race worked for defendant Cambridge Health Alliance ("CHA") until, in November 2021, she was fired from her job for refusing to be vaccinated against COVID-19. Asserting claims under Title VII, 42 U.S.C. § 2000e-2(a), and M.G.L. c. 151B, § 4(1A), she contends that CHA unlawfully discriminated against her sincerely held religious beliefs when it denied her request for an exemption from its vaccine requirement for employees. Pending before the Court are two motions arising out of discovery disputes. CHA moves for a protective order that would shield its Chief Executive Officer, Dr. Assaad Sayah, from sitting for a deposition in the case. Because CHA has met its burden to show that a deposition of Dr. Sayah would be unduly burdensome and duplicative of the Federal Rule of Civil Procedure 30(b)(6) deposition of CHA, the motion will be granted. Separately, Ms. Race moves to compel more complete responses to an interrogatory and a document request that concern the reasons CHA denied other employees' applications for religious exemptions to its vaccine mandate and the identities of those employees. That motion will be granted in part and denied in part. Although the identity of other employees

who sought religious exemptions is not relevant to Ms. Race's claims, CHA's reasons for denying other exemption requests are relevant to her claims. The Court will therefore order CHA to produce any documents that articulate the basis for the denial of other religious exemption requests and supplement its interrogatory response accordingly.

## BACKGROUND

### I.  Factual Background.

CHA is an integrated public safety net healthcare system that primarily serves patients in Cambridge, Somerville, Malden, Chelsea, Revere, and Everett. ECF 1, ¶ 3. In 2016, CHA hired Ms. Race as an Informatics Development Analyst II in its Information Technology Department. *Id.* ¶ 12. CHA promoted Ms. Race to an Informatics Team Lead position in 2019. *Id.*

On August 16, 2021, CHA announced that its employees must be fully vaccinated against COVID-19 by October 18, 2021. *Id.* ¶ 21. Employees were, however, allowed to submit religious exemption requests. *Id.* ¶ 22. Ms. Race submitted one such request, representing that her religious beliefs as a Pentecostal Christian conflicted with CHA's vaccine mandate. *Id.* ¶¶ 23-24. On September 20, 2021, she met with CHA's "interdisciplinary panel," the body responsible for reviewing exemption requests. *Id.* ¶ 25. Her request was denied on September 24, 2021. *Id.* ¶ 26.

Ms. Race alleges that CHA initially gave no explanation for the denial, but following an extensive back and forth, provided a letter stating that "[a]fter engaging in an interactive process with you, we have determined that we cannot accommodate your request for a religious accommodation, for the following reason(s)." ECF 19, at 3-4. The letter then included a table that listed five reasons: (1) the employee did not adequately explain why their religious belief prevented them from receiving the COVID-19 vaccine, (2) the employee failed to establish that their exemption request was based on a sincerely held religious belief, (3) the employee failed to

provide sufficient information or cooperation concerning the accommodation process, resulting in a breakdown of the interactive process, (4) the requested accommodation would constitute an undue hardship to the department, and (5) other. *Id.* at 4. Each reason had a checkbox to its left, and reasons (1), (2) and (5) were checked in Ms. Race's letter, with the additional text after (5) reading: "You will be required to return onsite which would cause an undue hardship to the department." *Id.* Ms. Race never received the COVID-19 vaccine, and her employment was terminated on November 5, 2021. ECF 1, ¶ 31.

## II. Procedural Background.

Ms. Race filed this lawsuit in January 2023 and the parties commenced discovery soon after. At issue here are two discovery requests propounded by Ms. Race: Interrogatory No. 16 and Document Request No. 5. Interrogatory No. 16 requests that CHA "[i]dentify by name and address each employee of CHA that requested an exemption on religious grounds from compliance with CHA's subject COVID-19 vaccine requirement. For each such individual likewise state whether the request was accommodated, and if not, the reason(s) why it was not accommodated." ECF 19, at 5. CHA responded by objecting to the interrogatory on various grounds, including that the identities of other employees and the reasons given for denying requests were not relevant to Ms. Race's claims. *Id.* at 5-6. CHA did state, however, that three individuals were granted religious exemptions to the mandate. *Id.*

Document Request No. 5 sought "[a]ny and all requests for exemption to CHA's COVID-19 vaccine requirement submitted by CHA employees on religious grounds during the Relevant Time Period." *Id.* at 6. CHA refused to turn over any documents responsive to this request, objecting on various grounds, including, as with the disputed interrogatory, that the information was irrelevant. *Id.*

3

Ms. Race served the requests on May 22, 2023, and CHA responded on July 11, 2023. ECF 24, at 2-3. Under the Court's scheduling order, fact discovery ended on October 23, 2023. ECF 9. On November 11, 2023, the parties jointly moved to extend the time for fact discovery. ECF 10. The Court gave the parties leave to finish their depositions but considered non-deposition fact discovery to have ended. ECF 11.

On November 30, 2023, Ms. Race noticed the deposition of Dr. Sayah, three other individuals, and CHA's Rule 30(b)(6) designee. ECF 24-1, at 4-18. Vennesa Graure, Senior Director of Labor and Employee Relations and Associate General Counsel at CHA, was CHA's Rule 30(b)(6) designee. ECF 24-2, at 2; ECF 24-3, ¶ 4. The Rule 30(b)(6) deposition topics included, as relevant here, "[t]he number of religious exemptions granted [pursuant] to CHA's COVID-19 vaccination policy," "[t]he number of religious exemptions applied for [pursuant] to CHA's COVID-19 vaccination policy," and "[t]he reasons given for the denials of applications for religious exemptions to CHA's COVID-19 vaccination policy." ECF 24-1, at 11. The parties conferred in December 2023 regarding the depositions, and, to that point, Ms. Race had not raised any issues concerning document production or integratory responses. Throughout the conferral process, Ms. Race insisted that a deposition of Dr. Sayah was necessary but agreed to defer the issue until after the other depositions were completed. ECF 17, at 5; ECF 17-6, at 2.

The deposition of Ms. Graure, CHA's Rule 30(b)(6) designee, was held on January 31, 2024. ECF 17, at 4. At her deposition, Ms. Graure testified that 52 religious exemption requests were made and three were granted, all on a temporary basis. ECF 24-2, at 6-7. She could not testify to the specific reasons underlying the 49 denials, but she did testify to the "factors CHA considered in its decision to approve or deny religious accommodation requests." ECF 24, at 4. The interdisciplinary panel considered, "among other things, whether the applicant had personal

4

reasons for their objections to the COVID-19 vaccine," and whether "allowing anyone to come on site unvaccinated at the peak of the pandemic created an unreasonable burden on the Hospital's operations because of the health and safety risk" posed by unvaccinated employees. *Id.* at 5.

Ms. Graure also testified that she had reviewed an Attorney/Client Privileged Spreadsheet ("Spreadsheet") that "stated the name of each applicant who applied for a religious or medical exemption, the dates on which the individuals applied for the exemption, whether the individual requested a religious or medical exemption, and whether the request was approved or denied." ECF 24, at 5. The Spreadsheet does not contain the reasons why CHA denied or approved each employee's exemption request. ECF 24-2, at 20-21. Ms. Race's attorney requested the Spreadsheet, but CHA refused. ECF 24, at 6.

After the Rule 30(b)(6) deposition, Ms. Race insisted that Dr. Sayah's deposition was still necessary. On February 2, 2024, the Court granted the parties' request to reopen fact discovery and extend the discovery deadline once again. ECF 14; ECF 15. On March 1, 2023, CHA moved for a protective order and Ms. Race moved to compel documents responsive to Document Request No. 5 and a more complete response to Interrogatory No. 16. ECF 16; ECF 18.

**STANDARD OF REVIEW**

To justify a motion to compel under Fed. R. Civ. P. Rule 26, the information sought must be: "(1) not privileged; (2) relevant to the claim or defense of any party; and (3) proportional to the needs of the case." *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 176 (D. Mass. 2021) (citation omitted). To warrant a protective order under Rule 26, a party must show good cause. *ACI Worldwide Corp. v. KeyBank Nat'l Ass'n*, No. 17-cv-10662-IT, 2018 WL 11148534, at *2 (D. Mass. July 18, 2018). "The good cause standard in [Rule 26] is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v.*

*Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (citation omitted). As relevant here, a showing of an "undue burden" is grounds for a protective order. *Smith*, 338 F.R.D. at 177 (citing Fed. R. Civ. P. Rule 26(c)(1)). "Rule 26 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 476 U.S. 20, 36 (1984)).

## DISCUSSION

### I. Plaintiff's Motion to Compel.

Ms. Race moves to compel documents and more complete answers to her interrogatory concerning the identities of other CHA employees who sought religious exemptions from the vaccine requirement and the reasons given by CHA for denying any of those requests. CHA contends that this information is not relevant or proportional to Ms. Race's claims.

#### A. Relevance.

The complaint asserts claims of religious discrimination in violation of Title VII and M.G.L. c. 151B. Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Chapter 151B similarly makes it unlawful for an employer to "impose upon an individual as a condition of . . . retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of," sincerely held religious beliefs, and it requires the employer to make "such accommodation" to the religious practice "as shall not cause undue hardship in the conduct of the employer's business." M.G.L. c. 151B, § 4(1A). To establish a prima case of religious discrimination under Title VII, a plaintiff must show "'that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 345 (2023)

(quoting *Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 12 (1st Cir. 2012)). The "'burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.'" *Id.* (quoting *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004)). A similar analysis is used to analyze religious discrimination claims brought under chapter 151B. *See Brown v. F.L. Roberts & Co., Inc.*, 452 Mass. 674, 676 (2008).

Ms. Race's motion to compel seeks information that identifies each CHA employee who applied for a religious exemption to the vaccine requirement and the reasons articulated by CHA for denying any of those requests. She argues that CHA's process was a "sham" and that CHA never intended to truly consider religious exemption requests. CHA responds that its actions with respect to other employees have no bearing on whether it discriminated against Ms. Race specifically. While the Court agrees with CHA that the identity of the other employees has no relevance to Ms. Race's claims,[1] the reasons CHA provided for denying other exemption requests—evidence that may reflect CHA's motive in adopting and implementing its policy—is relevant to her claims. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) (explaining that Title VII proscribes "certain motives," and "an employer who acts with the motive of avoiding [a religious] accommodation may violate Title VII"). While evidence that CHA was unable to provide employees with religious exemptions does not, without more, suggest that CHA was motivated by a desire to avoid religious accommodations or that its process was otherwise unreasonable, *see Fallon Cmty. Health Plan, Inc. v. Acting Dir. of Dep't of Unemployment*

---

[1] At the motion hearing, Ms. Race walked back her request for the names and addresses of other employees who sought exemptions. She indicated that she would be satisfied with production of other employees' applications for religious exemptions and documents explaining CHA's reasons for denying those applications.

*Assistance*, 493 Mass. 591, 596 n.8 (2024), evidence regarding the implementation of the religious exemption process could nevertheless reflect on CHA's motives in individual cases. *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149-50 (2d Cir. 2012) ("[P]roof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case" and "may be highly relevant to an individual disparate treatment or to a disparate impact claim."); *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 156 (1st Cir. 1990) ("statistical comparisons" are "often relevant" in disparate treatment cases). Thus, information concerning CHA's reasons for denying other employees' requests for religious exemptions from the vaccine requirement is relevant to Ms. Race's claims.

B. **Proportionality.**

CHA contends that, even if the information sought in Interrogatory No. 16 and Document Request No. 5 is relevant to Ms. Race's claims, it is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). In assessing whether requested discovery is proportional, the Court looks to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Smith*, 338 F.R.D. at 176 (quotation marks omitted).

The parties focus on three categories of documents that may contain information responsive to Ms. Race's discovery requests: (1) the Spreadsheet disclosed during the Rule 30(b)(6) deposition of CHA, (2) other applicants' Religious Exemption Application Forms, and (3) documents that identify the reasons for the rejection of religious exemption applications. The parties dispute whether the Spreadsheet is privileged and, if so, whether CHA has waived the

privilege. The Court need not resolve that dispute, however, because the information in the Spreadsheet is either not relevant or not proportional to the needs of the case. The Spreadsheet contains the identities of the employees who made exemption requests, when each request was made, whether the request was based on religious or medical reasons, and whether the exemption was granted or denied. ECF 22-2, at 4-5, 8; ECF 24, at 5, 13. Ms. Race already knows from the Rule 30(b)(6) deposition that CHA denied 49 religious exemption requests and granted three on a temporary basis. ECF 24-2, at 6-7. The remaining information in the Spreadsheet is not, as discussed, relevant to her claims. And the information that *is* relevant—information concerning the reasons articulated by CHA for denying the exemption requests—is not found in the Spreadsheet. The Court will not, accordingly, compel CHA to produce the Spreadsheet.

Compelling CHA to produce the other unsuccessful applicants' Religious Exemption Application Forms likewise would not be proportional to the needs of the case. The forms are, at most, only tangentially relevant. Ms. Race's theory of discrimination challenges CHA's process for considering religious exemption requests. As discussed, the reasons articulated by CHA for denying those requests are relevant, but the nexus between Ms. Race's claims and the specific basis for each applicant's request, beyond the religious unpinning of the request, is more tenuous. Further, these Religious Exemption Application forms contain sensitive personal information of third parties that would be highly burdensome to redact. *See* ECF 17-1, at 9-19. Production of the Religious Exemption Application Forms is not, therefore, proportional to the needs of the case.

The Court will, however, compel CHA to produce documents that identify the reasons for CHA's rejection of religious exemption applications. CHA sent Ms. Race a letter with the reasons why it rejected her application checked off and with some additional explanation for its denial of her request. ECF 19, at 3-4. Redacting similar documents would not be unduly burdensome. Thus,

9

to the extent these letters were created for other unsuccessful religious exemption applicants, CHA must produce the letters with personal identifying information redacted. And to the extent CHA has in its possession other documents that similarly identify its reasons for denying religious exemption applications, those documents must also be produced with appropriate redactions. CHA is ordered to produce these documents with all personal identifying information redacted, and to supplement its response to Interrogatory No. 16 accordingly, by June 12, 2024.[2]

## II.     **Defendant's Motion for a Protective Order.**

CHA moves for a protective order to prohibit Ms. Race from deposing its Chief Executive Officer, Dr. Sayah. Relying on the "apex doctrine," which is "an analytical framework [sometimes] used by courts in assessing whether to permit the depositions of individuals at the 'apex' of" institutions, *Viscito v. Nat'l Plan. Corp.*, No. 3:18-cv-30132-MGM, 2020 WL 4274721, at *2 (D. Mass. July 24, 2020) (quotation marks omitted), CHA contends that Dr. Sayah should not be

---

[2] CHA also briefly contends that Ms. Race's motion to compel should be denied because she failed to confer in good faith, as required by Local Rules 7.1(a)(2) and 37.1, before filing her motion with respect to Interrogatory No. 16 and Document Request No. 5. While adherence to the Local Rules is important and can often prompt resolution of disputes without motion practice, any noncompliance here by Ms. Race does not justify denying her motion. Her communications before filing the motion put CHA on notice that she was requesting information similar to the information sought in the interrogatory and document request. One week before filing the motion, her counsel wrote: "it is Plaintiff's position that Plaintiff is entitled to the production of the spreadsheet as well as information concerning the other unsuccessful applications. Specifically, at minimum, Plaintiff contends that Plaintiff is entitled to the production of (1) the other unsuccessful applicants' Religious Exemption Applicatio[n] Form[s]; and (2) documents sufficient to identify the reason(s) for the rejection of the application." ECF 24-4, at 2. The email also notified CHA that Ms. Race would move to compel if the parties could not come to an agreement. *Id.* Furthermore, Ms. Race's motion is, in part, a response to CHA's Rule 30(b)(6) deposition. Before that deposition, CHA was on notice that its designee would need to testify to "[t]he reasons given for the denials of applications for religious exemptions to CHA's COVID-19 vaccination policy." ECF 24-1, at 11. At the deposition, Ms. Graure testified in general terms about CHA's decision-making process. CHA argues that it was not required to "testify as to the *specific* reasons given as to why each particular application was approved or denied." ECF 24, at 4 (emphasis added). But the plain language of the topic indicates that Ms. Race expected CHA's Rule 30(b)(6) designee to testify, in some capacity, about why CHA denied specific applications for exemptions.

deposed because he has no unique "first-hand knowledge related to the claim[s] being litigated," *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007). In the alternative, CHA contends, a deposition of Dr. Sayah would be unduly burdensome and not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(c)(1).

The First Circuit has applied the apex doctrine to government leaders. *See Bogan*, 489 F.3d at 423-24. The rationale for the doctrine is that high-ranking government officials "'have greater duties and time constraints than other witnesses' and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation" and will be unable to sufficiently attend to their important civic obligations. *Id.* at 423 (quoting *In re United States (Kessler),* 985 F.2d 510, 512 (11th Cir. 1993)). Whether the apex doctrine applies to high-ranking officials in *private* institutions remains an open question in the First Circuit, and one that the Court need not address here, because CHA has met its burden to establish that it is entitled to a protective order under the ordinary standards of Rule 26(c)(1).

First, CHA has demonstrated that the areas of inquiry Ms. Race seeks to explore with Dr. Sayah are duplicative of the topics already covered in CHA's Rule 30(b)(6) deposition. Ms. Race wishes to question Dr. Sayah about "the formulation and implementation of the [vaccine] Mandate," the "establishment and administration of the policies at issue," and "CHA's motives and intentions" in adopting and implementing the policies. ECF 23, at 6. The first two of these topics were identified as areas of inquiry for the Rule 30(b)(6) deposition, *see* ECF 17-5, at 4-5, and when Ms. Race's attorney questioned Ms. Graure on those topics, Ms. Graure answered his questions, *see, e.g.*, ECF 17-1, at 4-8, ECF 24-2, at 11-14. With respect to CHA's motives in implementing the policies, Ms. Race's attorney repeatedly questioned Ms. Graure as to whether the interdisciplinary panel was directed by anyone at CHA to decide cases a certain way. *See* ECF

24-2, at 12-14. Ms. Graure testified that it was not. *Id.* Rule 30(b)(6) allows parties to obtain binding testimony from organizations in an efficient manner, and this is not a case in which a Rule 30(b)(6) designee for a private institution was unable to testify on the topics the plaintiff wishes to explore with its Chief Executive Officer. Because Dr. Sayah's testimony would be duplicative of CHA's Rule 30(b)(6) deposition, and Ms. Race has made no showing that Dr. Sayah would be better positioned to answer the questions already posed during that deposition, it would be unduly burdensome to allow his deposition to proceed.

Second, a deposition of Dr. Sayah would not otherwise be proportional to the needs of the case. Ms. Race has already deposed three CHA employees, including her direct supervisor and two members of the interdisciplinary panel that decided her religious exemption request, one of whom also acted as CHA's Rule 30(b)(6) designee. While Dr. Sayah participated in formulating the vaccine requirement and communicated the requirement to CHA employees by email and through town hall meetings, there is scant evidence that he had any role in implementing the policy, and there is no evidence that he has any knowledge about Ms. Race's exemption request in particular. In her opposition, Ms. Race argues that "it was [her] *understanding* that Sayah was personally involved in the implementation of the Mandate and sham exception process and personally formulated CHA's plan to deny requests for exemption[s] on pretextual grounds to attempt to create the facade that CHA was in compliance with state and federal law." ECF 23, at 3 (emphasis added). But Ms. Race's subjective opinions about how the process unfolded, untethered to any evidence, do not contradict the showing from CHA that Dr. Sayah has no unique, personal knowledge relevant to this topic. Nor do they show that any testimony Dr. Sayah could offer on implementation of the vaccine requirement or exemption review process would be

materially different from the testimony Ms. Race already obtained on that topic from CHA's Rule 30(b)(6) deposition. Accordingly, CHA's motion for a protective order is granted.

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiff's motion to compel, ECF 18, is GRANTED in part and DENIED in part. CHA is ordered to provide Ms. Race documents that articulate the reasons the other applications for religious exemptions were denied, and to supplement its response to Interrogatory No. 16 accordingly, by June 12, 2024. The defendant's motion for a protective order, ECF 16, is GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
Julia E. Kobick
United States District Judge

Dated: May 22, 2024